**Bonnie ROBB, As Administratrix of the Estate of Robert Jerome Poor, Deceased**

v.

**The UNITED STATES.**

No. 256–70.

United States Court of Claims.
March 17, 1972.

Nichols, J., filed concurring opinion.

Charles E. Rowe, San Diego, Cal., atty. of record for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, LARA-MORE, Senior Judge, and DAVIS, COLLINS, SKELTON, NICHOLS and KASHIWA, Judges.

ON PLAINTIFF'S MOTION AND DE-FENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

Plaintiff in this suit is contesting the jurisdiction of military courts over a civilian employee of the U. S. Navy. As the administratrix of the now-deceased employee's estate, she sues to recover a $5,000 fine imposed upon the decedent, Robert J. Poor, by a general court-martial held in DaNang, Vietnam, on May 22, 1968. The undisputed material facts are as follows.

Decedent was a civil engineer employed by the U. S. Navy in Vietnam during 1967 and 1968. He was charged under Article 92 of the Uniform Code of Military Justice [1] with violating general orders of the U.S. Military Assistance Command, Vietnam. Specifically, he was accused of (a) using Military Payment Certificates to purchase an amount of U.S. postal money orders ($2,000) which exceeded his normal monthly salary,[2] and (b) using military postal facilities to import diamonds valued at $8,000 into Vietnam for unauthorized resale.[3] These acts occurred at various times between June and December, 1967.

---

1. Article 92 provides that any person subject to the act who "violates or fails to obey any lawful general order or regulation" shall be punished as a court-martial may direct. 10 U.S.C. § 892 (1970).

2. A violation of paragraphs 32 and 38 of U. S. Military Assistance Command, Vietnam, Directive 37-6, dated January 24, 1967.

3. A violation of paragraphs 5(b) and 5 (c) (11) of U. S. Military Assistance Command, Vietnam, Directive 643-1, dated June 11, 1967.

At the general court-martial, counsel for decedent objected to the court's jurisdiction under Article 2(10) of the U.C.M.J. which provides:

The following persons are subject to this chapter:

\* \* \* \* \* \*

(10) In time of war, persons serving with or accompanying an armed force in the field. [10 U.S.C. § 802 (1970)].

Counsel's motion to dismiss the charges was denied, and the trial proceeded. Decedent pleaded guilty to the charges and was sentenced to pay a fine of $10,000 and to serve two years imprisonment. Later, the convening authority reduced the fine to $5,000 and suspended the imprisonment. Decedent paid the fine.

Decedent appealed his conviction to a Navy Board of Review and repeated the objection to jurisdiction founded on Article 2(10). On July 29, 1969, the Board of Review rejected all his arguments and affirmed the conviction. Decedent did not seek review of the decision in the United States Court of Military Appeals, and the time for such appeal has now expired.

On July 20, 1970, plaintiff petitioned this court to seek return of the $5,000 fine. We do not find the failure to appeal to the highest military court to be an impediment to our consideration of plaintiff's claim because she raises "substantial arguments denying the right of the military to try [decedent]." Noyd v. Bond, 395 U.S. 683, 696 n. 8, 89 S.Ct. 1876, 1884, 23 L.Ed.2d 631 (1969). Her renewal of decedent's claim that the military court was without jurisdiction to try him is based on two arguments.

First, she claims that Article 2(10) should be interpreted to mean only a war declared by Congress. Second, she assails the constitutionality of the Article. We find it unnecessary to reach the constitutional question. See Hagarty v. United States, Ct.Cl., 449 F.2d 352, decided October 15, 1971.

Plaintiff urges upon a decision by the U.S. Court of Military Appeals, United States v. Averette, 19 U.S.C.M.A. 363, 41 C.M.R. 363 (1970). Averette was a civilian employee of an Army contractor in Vietnam. He was convicted by a general court-martial of conspiracy to commit larceny and attempted larceny of 36,000 batteries owned by the United States. After discussing the history of Article 2(10) and distinguishing other areas of the U.C.M.J. where the same phrase "in time of war" had been interpreted to include undeclared wars,[4] that court held that the plaintiff should not have been tried by a military court for his offense:

As a result of the most recent guidance in this area from the Supreme Court we believe that a strict and literal construction of the phrase "in time of war" should be applied. A broader construction of Article 2(10) would open the possibility of civilian prosecutions by military courts whenever military action on a varying scale of intensity occurs.

We do not presume to express an opinion on whether Congress may constitutionally provide for court-martial jurisdiction over civilians in time of a declared war when these civilians are accompanying the armed forces in the field. Our holding is limited—for a civilian to be triable by court-martial in "time of war," Article 2(10) means

4. *E. g.*, United States v. Anderson, 17 U.S.C.M.A. 588, 38 C.M.R. 386 (1968), construed the conflict in Vietnam as a "time of war" within the meaning of U.C.M.J., Art. 43(a), 10 U.S.C. § 843(a) (1970), which eliminates the statute of limitations for certain offenses in time of war; United States v. Bancroft, 3 U.S.C.M.A. 3, 11 C.M.R. 3 (1953), held that the Korean conflict constituted a "time of war" within the meaning of U.C.M.J., Art. 113, 10 U.S.C. § 913 (1970), which increases the maximum penalty for certain offenses in time of war.

*See* Note, Military Law—"In Time of War", Under the Uniform Code of Military Justice: An Elusive Standard, 67 Mich.L.Rev. 841 (1969); 12 Wm. & Mary L. Rev. 448 (1970).

a war formally declared by Congress. We emphasize our awareness that the fighting in Vietnam qualifies as a war as that word is generally used and understood. By almost any standard of comparison—the number of persons involved, the level of casualties, the ferocity of the combat, the extent of the suffering, and the impact on our nation—the Vietnamese armed conflict is a major military action. But such a recognition should not serve as a shortcut for a formal declaration of war, at least in the sensitive area of subjecting civilians to military jurisdiction. [19 U.S.C.M.A. at 365–366].

 We acknowledge the special competence of the Court of Military Appeals. Its expertise in administering military justice has already been explained by the Supreme Court in Noyd v. Bond, *supra*, 395 U.S. at 694, 89 S.Ct. at 1883:

> When after the Second World War, Congress became convinced of the need to assure direct civilian review over military justice, it deliberately chose to confide this power to a specialized Court of Military Appeals, so that disinterested civilian judges could gain over time a fully developed understanding of the distinctive problems and legal traditions of the Armed Forces.

Therefore, we are greatly influenced by a decision of that court, especially where it considers facts, as in *Averette*, that are quite close to decedent's situation. Both were civilians on extended duty within the geographic limits of Vietnam, and both were eligible for various military privileges and services. That decedent was employed directly by the United States, rather than by a government contractor, is unimportant. We hold, following *Averette*, that the phrase "in time of war" in Article 2(10) refers to a state of war formally declared by Congress despite the fact that the conflict in Vietnam is a war in the popular sense of the word. Therefore, short of a declared war, a court-martial has no jurisdiction over a civilian who is "serving with or accompanying an armed force in the field."

Though our statutory interpretation differs, we reach the same result today as did the Circuit Court of Appeals for the District of Columbia in Latney v. Ignatius, 135 U.S.App.D.C. 65, 416 F.2d 821 (1969). That court ruled that a court-martial did not have jurisdiction to try an American merchant seaman charged with the murder of a crewmember in a bar while their ship was unloading cargo in Vietnam. It assumed that the conflict in Vietnam was of sufficient magnitude to activate Article 2(10), but concluded that the Supreme Court decision in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and earlier cases involving civilians, compelled a narrow interpretation of the statute. Thus, it denied military jurisdiction over Latney on the ground that he was not assimilated into the war zone.

 When *Latney* was decided, the Court of Military Appeals had not considered *Averette*. We agree with both cases that the succession of Supreme Court decisions dealing with military jurisdiction over civilians leads to the conclusion that Article 2(10) is to be narrowly construed. However, from our perspective today, and particularly in view of our reluctance to disturb a decision of the specialized military court, we adopt *Averette*, as the basis of our judgment.

A further compelling reason for following *Averette* is that Congress seems to have endowed the rulings of the Court of Military Appeals with absolute finality where they *favor* the serviceman (or other court-martial defendant). Article 76 of the Uniform Code of Military Justice, 10 U.S.C. § 876 (1970), provides that military review of court-martial convictions (including decisions of the Court of Military Appeals) shall be "final and conclusive" and "binding upon all * * * courts * * * of the United States." If the accused has been convicted, there is an implied exception

in his behalf for relief through habeas corpus (United States v. Augenblick, 393 U.S. 348, 349–350, 89 S.Ct. 528, 21 L. Ed.2d 537 (1969) ), and in the view of some Courts of Appeals [5] and of this court,[6] also by way of declaratory judgment or other form of civil action, provided that the judicial review is confined in scope to that comparable to habeas corpus scrutiny. But there appears to be no such review available to the Government if the Court of Military Appeals decides against the Government and in favor of the court-martial defendant. Article 76 makes a final military determination "binding upon all departments * * * agencies, and officers of the United States," and the implied exceptions are for the benefit of the accused individual so that he can seek a ruling by an Article III court on his constitutional or jurisdictional claims. The Government, it would seem, has no such right to ask a civilian court to overturn a determination by the Court of Military Appeals in favor of the accused. There was no way, for example, in which the Government could have Averette's conviction reinstated by an Article III court after it had been quashed by the Court of Military Appeals. Congress can, of course, restrict the Government to a decision by the military tribunals, and Article 76 appears to have done just that. We do not suggest that we are technically bound by the *Averette* ruling, as we might be if Averette were himself the plaintiff here, but we do find significance in Congress' special deference toward the Court of Military Appeals where that court rules against the Government. This being so, we think that civilian courts should normally follow, without the usual independent examination, a Court of Military Appeals ruling on an issue of jurisdiction under military law which favors the court-martial defendant.

## CONCLUSION

For these reasons, we believe that the court-martial that tried the decedent, Robert J. Poor, was without jurisdiction to do so. Plaintiff is entitled to recover against the United States in the sum of $5,000, the amount of the fine that was improperly imposed. Her motion for summary judgment is granted, defendant's cross-motion is denied and judgment is entered for plaintiff, accordingly.

NICHOLS, Judge (concurring) :

I join in the decision and opinion of the court. However, for myself I want to make it clear that I rely wholly on the excellent reasons Judge Kashiwa adduces for not deviating from the view of the Court of Military Appeals stated in the *Averette* decision. In this field, the law is what the Court of Military Appeals says it is, with the exceptions the court notes. Whether, independently, I would have said the same, is neither here nor there. Ordinarily, it is prudent to declare that a decision we choose to follow has a basis in reason, but in the special circumstances we have here, that is not the case.

5. *See* Ashe v. McNamara, 355 F.2d 277 (1st Cir., 1965) ; Smith v. McNamara, 395 F.2d 896 (10th Cir., 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969) ; Gallagher v. Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966) ; Kauffman v. Secretary of Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991 (1969), cert. denied, 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970) ; Homcy v. Resor, (D.C.Cir., 455 F.2d 1345 decided Dec. 16, 1971).

6. *See* Shaw v. United States, 357 F.2d 949, 953–954, 174 Ct.Cl. 899, 903–906 (1966) ; Augenblick v. United States, 377 F.2d 586, 591–593, 180 Ct.Cl. 131, 140–144 (1967) and Juhl v. United States, 383 F.2d 1009, 1018, 1019, 1020, 1023, 181 Ct.Cl. 210, 227, 228–229, 230, 234–235 (1967), both reversed on other grounds, United States v. Augenblick, 393 U.S. 348, 351–352, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) ; Gearinger v. United States, 412 F.2d 862, 863–864, 188 Ct.Cl. 512, 515 (1969) ; Gallagher v. United States, 423 F.2d 1371, 191 Ct.Cl. 546 (1970), cert. denied, 400 U.S. 849, 91 S.Ct. 58, 27 L.Ed.2d 86.